Slip Op. 12- 112

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES,**<br><br>                    Plaintiff,<br><br>          v.<br><br>**ACTIVE FRONTIER INTERNATIONAL, INC.,**<br><br>                    Defendant. | Before: Timothy C. Stanceu, Judge<br><br>Court No. 11-00167 |

**OPINION AND ORDER**

[Denying without prejudice plaintiff's application for default judgment in action seeking civil penalty for alleged false statements of country of origin made upon entry of wearing apparel]

Date: August 30, 2012

*Melissa M. Devine*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Jean M. Del Colliano*, Office of the Associate Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

Stanceu, Judge: Plaintiff United States brought this action to recover a civil penalty under section 592 of the Tariff Act of 1930, 19 U.S.C. § 1592 (2006) ("Section 592"), from Active Frontier International, Inc. ("AFI" or "Active Frontier"), a New York corporation, alleging that AFI falsely declared the country of origin of wearing apparel on seven entries made during 2006 and 2007. Compl. ¶¶ 1, 3, 16 (May 31, 2011), ECF No. 2. Plaintiff alleges that the wearing apparel on the seven entries was manufactured in the People's Republic of China ("China") but that the documentation filed with U.S. Customs and Border Protection ("Customs" or "CBP") for each of the entries showed one of three countries, specifically, Indonesia, South Korea or the

Philippines, as the country of origin on the entry documentation. *Id.* ¶¶ 6, 8(a)-(b). After AFI failed to plead or otherwise defend itself, the Clerk of the Court entered AFI's default. Before the court is plaintiff's application for a judgment by default seeking a civil penalty of $80,596.40, an amount calculated as 20% of the aggregate dutiable value of the merchandise on the seven entries. Mot. for Default J. (Dec. 2, 2011), ECF No. 9 ("Pl.'s Mot."). Because the complaint lacks well-pled facts establishing defendant's liability for a civil penalty, the court denies the application without prejudice.

## I. BACKGROUND

In August 2010, Customs issued a pre-penalty notice informing AFI that Customs was considering imposing a civil penalty under Section 592. Compl. ¶ 10. This notice calculated a proposed penalty of $80,596.40, based on a degree of culpability of negligence. *Id.* AFI did not respond to the pre-penalty notice. *Id.* In September 2010, Customs issued to AFI a notice of penalty demanding payment of $80,596.40. *Id.* ¶ 11. AFI did not respond to the notice of penalty. *Id.*

Plaintiff initiated this action to recover a civil penalty against AFI on May 31, 2011. After defendant failed to plead or otherwise defend itself, the Clerk of the Court, at plaintiff's request, entered AFI's default on August 4, 2011. Entry of Default (Aug. 4, 2011), ECF No. 7; Request for Entry of Default (Aug. 3, 2011), ECF No. 6. On December 2, 2011, plaintiff filed an application for a judgment by default under USCIT Rule 55(b), seeking a civil penalty of $80,596.40, plus an award of post-judgment interest. Pl.'s Mot. In the application, plaintiff stated that "the well-pled facts demonstrate that the false country of origin statements prohibited CBP from effectively mak[ing] determinations as to the origin and admissibility of the merchandise entered by Active Frontier." *Id.* at 3; *see* Compl. ¶ 9 (alleging that AFI's origin

statements "influenced, among other things, CBP's determinations as to the origin and admissibility of the merchandise entered by AFI"). Plaintiff attached to the application a declaration by Raymond J. Irizarry, a CBP Import Specialist, stating that "all of the merchandise imported by Active Frontier through the seven entries . . . were [*sic*] subject to quota." Pl.'s Mot. 3 & Decl. of Irizarry ¶ 14 ("First Irizarry Declaration").

On June 18, 2012, the court issued an order inviting plaintiff to make an additional submission to identify the quota provision or provisions applicable to the merchandise on the seven entries. Order (June 18, 2012), ECF No. 11. In the order, the court noted that plaintiff's submissions failed to cite any quota provision and stated that the declaration of Mr. Irizarry did not suffice to resolve the issue. *Id.* The supplemental brief plaintiff filed on August 1, 2012 in response to the court's June 18, 2012 order acknowledged that some of the wearing apparel at issue was not subject to quota and that Mr. Irizarry's declaration that all of the merchandise was subject to quota was "a misstatement." Pl.'s Supplemental Br. 4 (Aug. 1, 2012), ECF No. 15. The submission and exhibits, including a second declaration of Mr. Irizarry ("Second Irizarry Declaration"), cited a quota provision and stated that certain merchandise on each of the seven entries was subject to that quota provision; this merchandise was described as having an aggregate entered value of $190,900 out of a total aggregate entered value of $402,982 for all merchandise on the seven entries. *Id.* at 4 & exhibit C. The August 1, 2012 submission reiterated plaintiff's request that the court enter a judgment by default in the amount of $80,596.40, plus post-judgment interest.

## II. DISCUSSION

Section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1582(1) (2006), grants the court jurisdiction over this action to recover a civil penalty under Section 592. Under

Section 592, the court determines all issues *de novo*, including the amount of any penalty. 19 U.S.C. § 1592(e)(1). In evaluating an application for judgment by default, the court accepts as true all well-pled facts in the complaint but must reach its own legal conclusions. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998).

>Section 592(a)(1) provides, in pertinent part, that
>
>[N]o person, by fraud, gross negligence, or negligence-
>  (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—
>       (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
>       (ii) any omission which is material[.]

19 U.S.C. § 1592(a)(1)(A). For a negligent violation that did not result in a loss of revenue to the United States, the statute prescribes a maximum penalty of 20% of the dutiable value. *Id.* § 1592(c)(3)(B). In this case, plaintiff may obtain a judgment by default for a civil penalty under Section 592 if it presents well-pled facts from which the court can conclude that AFI entered merchandise by means of statements of country of origin that were "material and false." *Id.* § 1592(a)(1)(A)(i). Where, as here, the United States seeks a penalty under Section 592 based on a culpability level of negligence, "the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." *Id.* § 1592(e)(4). Because defendant has defaulted, plaintiff need not plead facts from which the court could conclude that statements alleged to be material and false occurred by negligence.

The complaint alleges that "[on] seven separate occasions, between June 5, 2006 and March 2, 2007, AFI entered and/or introduced, or caused to be entered and/or introduced, certain articles of wearing apparel manufactured in the People's Republic of China into the commerce of

the United States . . . ." Compl. ¶ 6. It further alleges that, for each of the seven entries, AFI declared on entry documentation that the country of origin of the goods was a country other than China. *Id.* ¶ 8. The complaint states that "AFI submitted to CBP bills of lading, entry summaries, and/or other entry documents stating that such articles of wearing apparel were . . . manufactured in Indonesia, Korea, and/or the Philippines." *Id.* ¶ 8(a). It also states that AFI submitted "Manufacturer's Identification Codes" that incorrectly indicated that the goods were manufactured in countries other than China. *Id.* ¶ 8(b). The complaint states that the violations alleged therein did not affect the assessment of duties. *Id.* ¶ 13.

By using the terms "material and false" in subparagraph (1)(A)(i) of subsection (a) of Section 592, Congress signified that not every false statement made in connection with the entry of merchandise will subject an importer to civil penalty liability. Section 592, however, does not define the term "material." The purpose of Section 592, as stated in the Senate Report accompanying enactment of the 1978 amendments to the section, which introduced a general materiality requirement into the text of the statute, is "to encourage accurate completion of the entry documents upon which Customs must rely to assess duties and administer other customs laws." *See* S. Rep. No. 778, at 17 (1978) ("*Senate Report*"). *Black's Law Dictionary* contains a definition of the word "material" relevant to this stated purpose: "[of] such a nature that knowledge of the item would affect a person's decision-making; significant; essential." Black's Law Dictionary 998 (8th ed. 2004).

The government's complaint does not allege facts from which the court can conclude that the alleged false statements of country of origin made upon entry were "material" within the meaning of Section 592. Within the complaint, only one paragraph, paragraph nine, addresses the question of materiality. Paragraph nine reads as follows:

>The documents, statements, acts, and/or omissions referenced in paragraphs six through eight were materially false because these documents, statements, acts, and/or omissions influenced, among other things, CBP's determinations as to the origin and admissibility of the merchandise entered by AFI.

Compl. ¶ 9. The first "fact" alleged in the paragraph—that the allegedly false *origin* statements affected CBP's determinations as to the *origin* of the merchandise—is circular and fails to inform the court of any relevant fact. The implied premise underlying this allegation is a conclusion of law: that any false country of origin statement made in connection with the entry of merchandise is, *per se*, "material" within the meaning of Section 592(a)(1)(A)(i), a premise plaintiff reiterates in its subsequent submissions. The second "fact" alleged in paragraph nine of the complaint, that the allegedly false statements of country of origin "influenced, among other things, CBP's determinations as to the . . . admissibility of the merchandise entered by AFI," is too conclusory to qualify as a well-pled fact. The complaint alleges no actual facts from which the court may conclude that the declarations of country of origin were relevant to the admissibility of the merchandise at issue in this case. Below, the court addresses these two allegations separately.

Plaintiff cites no binding authority for the proposition that any false statement of country of origin made upon entry of merchandise is, *per se*, material for purposes of Section 592, and the court is aware of none. Customs defined the term "material" as used in Section 592 in its "Guidelines for the Imposition and Mitigation of Penalties for Violations of 19 U.S.C. 1592" ("Penalty Guidelines"), which were published as an appendix to the Customs regulations after notice and comment. 19 C.F.R. Part 171 Appendix B(B) (2006) ("*Penalty Guidelines*"). The Penalty Guidelines define a material statement as one that "has the natural tendency to influence or is capable of influencing" a decision by Customs as to, *inter alia*, "the source, origin, or

quality of merchandise." *Id.* The false origin statements plaintiff alleges AFI to have made would appear to be material under that broad definition.

The construction of the statutory term "material" supplied by the Penalty Guidelines, however, is not binding on the court. The Penalty Guidelines were designated upon issuance as non-binding on Customs and as being disseminated only to inform the public of internal agency guidance. *See Guidelines for the Imposition & Mitigation of Penalties for Violations of 19 U.S.C. 1592*, 65 Fed. Reg. 39,087, 39,089 (June 23, 2000) (stating that Customs "may depart from the guidelines as appropriate circumstances warrant"); *Penalties & Penalties Procedures*, 49 Fed. Reg. 1,672, 1,673 (Jan. 13, 1984) ("Customs is including the guidelines as an appendix to the regulations merely to advise the public of them."). Because the Penalty Guidelines are not a legislative rule and, instead, are expressly intended as non-binding on the agency that issued them, they cannot bind the Judicial Branch. *See* Charles H. Koch, Jr., 3 Administrative Law & Practice § 10:22 (3d ed. 2010).

An agency's guidelines, although not binding on a court, still may be entitled to a degree of deference. *Id.* Where, as here, such guidelines are "interpretative rulings" construing a statute an agency is charged to administer, they may be "entitled to consideration in determining legislative intent," but "courts properly may accord less weight to such guidelines than to administrative regulations which Congress has declared shall have the force of law, or to regulations which under the enabling statute may themselves supply the basis for imposition of liability." *General Electric Co. v. Gilbert*, 429 U.S. 125, 141 (1976) (citations omitted). The Court in *Gilbert* noted that a "comprehensive statement of the role of interpretative rulings . . . is found in *Skidmore v. Swift & Co.*," *id.*, which instructed that courts may resort for guidance to a non-binding agency interpretative ruling and defer to such a ruling based on "all those factors

which give it the power to persuade, if lacking the power to control." 323 U.S. 134, 140 (1944); *see also Travelstead v. Derwinski*, 978 F.2d 1244, 1250 (Fed. Cir. 1992) ("[A]gency pronouncements that are merely interpretive are given lesser deference, varying with such factors as the timing and consistency of the agency's position and the nature of its expertise.").

The court concludes that the definition of "material" adopted by the Penalty Guidelines is unpersuasive, and at odds with the statutory purpose, in categorically deeming any false statement of origin "material" within the meaning of Section 592. The Penalty Guidelines definition would subject an importer to penalty liability of up to 20% of the dutiable value of the merchandise for any negligently-made origin statement, even one that has no potential to affect a determination made under any law pertaining to the imported merchandise. Such a broad concept of "materiality" reaches well beyond the congressional purpose underlying Section 592. As stated in the Senate Report, that purpose is to ensure that Customs has accurate information with which to "assess duties and administer other customs laws." *Senate Report* 17. Thus, the legislative history indicates that a misstatement of country of origin made upon entry will be material for purposes of Section 592 if it affects, or has the potential to affect, some determination Customs is called on to make with respect to the imported merchandise in question.[1] The complaint alleges no facts from which the court could conclude that the alleged false origin statements had the potential to influence any determination that any government

---

[1] A false statement made upon entry has been held to be material under section 592 of the Tariff Act of 1930, 19 U.S.C. § 1592 (2006), even though the false statement had the potential to affect a determination to be made by an agency other than U.S. Customs and Border Protection. *United States v. Daewoo Int'l (America) Corp.*, 12 CIT 889, 895, 696 F. Supp. 1534, 1540 (1988) (holding that overvaluation of steel imports that did not result in duty underpayment nevertheless was material in disguising actual entered value, on which depended the administration of the "trigger price mechanism" implemented to identify potential situations in which the U.S. Department of Commerce would self-initiate an antidumping duty investigation).

agency was required to make with respect to the imported merchandise.  Due to the insufficiency of the complaint in pleading facts relevant to the question of materiality, the court need not reach, at this point in the proceeding, the question of whether the alleged misstatements of origin were material under Section 592 for some other, as yet unspecified, reason.  It is sufficient at this point for the court to conclude, first, that the overbroad Penalty Guidelines definition of materiality should not be applied in adjudicating this case, and, second, that aside from the question of admissibility, which the court addresses below, the complaint fails to plead any facts from which the court could conclude that these alleged misstatements were material.

As discussed previously, paragraph nine of the complaint also states that the alleged misstatements of country of origin affected the determination by Customs as to the admissibility of the merchandise.  However, the complaint alleges no actual facts from which the court may conclude that the declarations of country of origin were relevant to the admissibility of the particular merchandise at issue in this case, as described in the complaint.  Plaintiff's application for a default judgment, by means of Mr. Irizarry's original affidavit, informed the court (incorrectly) that all of the articles of Chinese-origin wearing apparel imported on the seven entries were subject to quota.  First Irizarry Declaration ¶ 14.  In response to the court's inquiry, plaintiff acknowledged in its supplemental brief that this statement was in error.  Pl.'s Supplemental Br. 4.  The error aside, both plaintiff's application and the supplemental brief allege facts beyond those stated in the complaint, which, in contrast to these two submissions, fails to describe the goods sufficiently to allow the court to conclude that some or all of the goods fall within a class, kind, or category of apparel that was subject to a quantitative restriction.  Instead, the complaint offers only a vague description, "certain articles of wearing

apparel manufactured in the People's Republic of China." Compl. ¶ 6.[2] The alleged false origin statements could have affected the admissibility of all the merchandise, as described in the complaint, only if all wearing apparel of Chinese origin were subject to quota at the time the entries were made, which was not the case. Plaintiff's complaint impermissibly would require the court to speculate that the unspecified apparel articles were quota merchandise. Because the court must rule on plaintiff's application according to well-pled facts, facts not pled in the complaint but offered only in a subsequent submission will not suffice.

Plaintiff argues in its supplemental brief that "[b]ecause each entry contains material subject to quota, Active Frontier's false country of origin in its entries statements are thus material." Pl.'s Supplemental Br. 4. For this argument, plaintiff is relying on factual allegations made not in the complaint but in the supplemental brief, which indicates that each of the seven entries contained apparel items subject to quota; exhibits to the supplemental brief indicate that six also contained non-quota items. *Id.* Even had these additional facts been alleged in the complaint, however, they would not establish that the mere presence of both non-quota and quota merchandise on the same entry, for all of which merchandise the origin was allegedly declared

---

[2] The exhibits attached to plaintiff's application for default judgment and supplemental brief indicate that the merchandise at issue consisted of women's jogging jackets, which plaintiff states were not subject to quota, and women's polyester jogging or capri pants, which plaintiff describes as subject to quota. *See Establishment of Agreed Import Levels & the ELVIS (Electronic Visa Information System) Requirement for Certain Cotton, Wool, Man-Made Fiber, Silk Blend & Other Vegetable Fiber Textiles & Textile Products Produced or Manufactured in the People's Republic of China*, 70 Fed. Reg. 74,777 (Dec. 16, 2005) (establishing 2006 quota); *Establishment of Agreed Import Levels for Certain Cotton, Wool, Man-Made Fiber, Silk Blend & Other Vegetable Fiber Textiles & Textile Products Produced or Manufactured in the People's Republic of China*, 71 Fed. Reg. 62,999 (Oct. 27, 2006) (establishing 2007 quota). Plaintiff provided as exhibits copies of entry summaries and certain other entry documentation for only four of the seven entries at issue in this case. For the other three entries, plaintiff provides limited documentation, on which the nature of the merchandise is revealed in only the most general of terms.

falsely, sufficed to make the origin declaration material as to the non-quota merchandise on the entry. None of the facts plaintiff alleges—within or outside of the complaint—would allow the court to conclude that the origin statements could have affected the determination of the admissibility of non-quota merchandise, whether or not present on the same entry as quota merchandise.

Plaintiff maintains, further, that "the false country of origin statement is material even in those instances where the material was not subject to quota." *Id.* Plaintiff argues that "false country of origin statements are 'always, or nearly always material'" based on their "'potential to affect all of Customs' core decisions'" including "'Customs record-keeping, which in turn has the potential to affect decisions as to whether to bringing unfair trade action, which in turn has the potential to affect duties.'" *Id.* at 4 (quoting *United States v. Pentax Corp.*, 23 CIT 668, 670, 69 F. Supp. 2d 1361, 1363 (1999)).[3] The court rejects plaintiff's argument. The court cannot conclude from the facts pled in the complaint that the alleged misstatements of country of origin made upon entry affected admissibility or had any potential to affect any other determination Customs or another agency was required to make under any law applying to the importation of the merchandise. Nor do the facts as pled allow the court to discern any other plausible basis on which the alleged misstatements could be material.

Finding materiality to exist merely because a misstatement or material omission affected the accuracy of CBP record-keeping or of import statistics would impose serious penalty liability for any of a great number of common and inconsequential errors appearing in entry documentation. Such a low threshold for penalty liability would stretch the concept of

---

[3] The decision of this Court in *United States v. Pentax Corporation*, 23 CIT 668, 69 F. Supp. 2d 1361 (1999), upon which plaintiff relies for its argument, was based, in part, on the presence of false country of origin marking.

Section 592 materiality to the point where it is practically meaningless. The Penalty Guidelines adopt just such an expansive "statistical" conception of Section 592 materiality with respect to classification, valuation, and import statistics in general. *Penalty Guidelines* (B) ("A document, statement, act, or omission is material if it has the natural tendency to influence or is capable of influencing . . . the classification [or] appraisement" of merchandise or the "collection and reporting of accurate trade statistics."). In this respect as well as in the respect discussed *supra*, these guidelines do not set forth a persuasive interpretation of the word "material" as used in 19 U.S.C. § 1592(a)(1)(A)(i). Many negligent errors in tariff classification or valuation do not result in a revenue loss to the government (and sometimes result in over-collection of duty) and have no effect on any determination to be made upon the imported goods under any law, yet invariably affect import statistics. Deeming all such negligent errors violations of Section 592 would produce anomalous and prejudicial results. For example, an importer who negligently misclassifies merchandise in a tariff provision that is subject to a duty might succeed upon a protest in obtaining reliquidation under the correct duty-free tariff provision, only to lose the benefit of the protest, and possibly much more, were Customs to seek and obtain a 20% non-revenue-loss penalty under Section 592 for negligence, based on a determination of Section 592 materiality grounded in nothing more than import statistics. Such inconsequential classification or valuation errors have not been recognized in the case law as material for purposes of Section 592. Moreover, it is not clear to the court that Customs, in actual practice, has applied a concept of materiality as broad as that contained in the Penalty Guidelines. As the court has noted, these guidelines are not binding on the administrative penalty proceedings that Customs conducts under Section 592(b). *See also* 19 C.F.R. § 141.61(e)(5) ("Penalty procedures relating

to erroneous statistical information shall not be invoked against any person who in good faith attempts to comply with the statistical requirements of the General Statistical Note, HTSUS.").

Plaintiff also argues that "knowing where merchandise from arrives [*sic*] affects security considerations, including risk assessment and advance targeting of arriving merchandise." Pl.'s Supplemental Br. 4 (citing Second Irizarry Declaration). This argument is unavailing. The correctly-determined country of origin of merchandise is, of course, not necessarily the country from which the merchandise arrives. Rather than depend on the country from which the good is exported to the United States, country of origin instead is determined according to rules of origin that consider, *inter alia*, the origin of materials and the level of processing undertaken in a given country. And an incorrect statement of country of origin does not prevent Customs from knowing the country from which merchandise was exported, a fact that is reported separately. *See* First Irizarry Declaration exhibits 1-14.

Plaintiff states, further, that "knowing where merchandise arrives from also supports CBP's mission for national and economic security, in that it implicates the accounting considerations for determining whether merchandise should be subject to quota in the future." Pl.'s Supplemental Br. 5. This argument is also flawed. Quotas are administered typically, if not invariably, according to country of origin, not the country from which merchandise arrives. Even had this argument been expressed as to origin, the court still would reject it. An error in an import statistic potentially might affect future legislation imposing a quota, but the highly speculative nature of that prospect cautions against basing materiality on such a slender reed. Section 592 is written in the present tense, imposing liability for a false statement or act, or an omission, that "is material." 19 U.S.C. § 1592(a)(1)(A)(i), (ii). Virtually any import statistic might be consulted as to enactment of a future trade law and, for reasons the court has discussed,

basing Section 592 materiality on the effect an error has on trade statistics renders the materiality concept practically meaningless. The legislative history discusses the need for accurate information with which to "assess duties and administer other customs *laws*." *Senate Report* 17 (emphasis added). The court does not glean from the legislative history a congressional intent that any error affecting import statistics should be deemed material under Section 592 simply because it conceivably could be considered by Congress in enacting a future law.

### III. CONCLUSION AND ORDER

In conclusion, the court denies plaintiff's application for a judgment by default because the complaint fails to allege facts from which the court can conclude that the alleged false country of origin statements made upon entry were material within the meaning of Section 592(a)(1)(A)(i).

Therefore, upon consideration of plaintiff's application and all papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that plaintiff's application for judgment by default be, and hereby is, denied without prejudice; and it is further

**ORDERED** that plaintiff shall have thirty days from the date of this Opinion and Order in which to seek leave to amend its complaint according to USCIT Rule 15(a).

In the absence of a timely motion for leave to amend the complaint, the court will issue a further order giving notice of the pending dismissal of this action according to USCIT Rule 41(b)(3).

       /s/ Timothy C. Stanceu
       Timothy C. Stanceu
       Judge

Dated: August 30, 2012
     New York, New York