Slip Op. 18-58

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **UNITED STATES,**  Plaintiff,  v.  **ACTIVE FRONTIER INTERNATIONAL, INC.,**  Defendant. | Before: Timothy C. Stanceu, Chief Judge  Court No. 11-00167 |

**OPINION**

[Granting plaintiff's application for judgment by default in penalty action]

Dated: May 24, 2018

*Joshua A. Mandelbaum*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for plaintiff. With him on the application were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the application was *Mary McGarvey-Depuy*, Senior Attorney, Office of the Associate Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

Stanceu, Chief Judge: Plaintiff United States brought this action to recover a civil penalty under section 592 of the Tariff Act of 1930 (the "Tariff Act"), *as amended*, 19 U.S.C. § 1592 (2006)[1], from Active Frontier International, Inc. ("Active Frontier"), for alleged false declarations of country of origin on seven entries of wearing apparel made during 2006 and 2007. Before the court is plaintiff's application for a judgment by default seeking a civil penalty of $80,596.40, an amount calculated at the statutory maximum of 20% of the aggregate dutiable

---

[1] All citations to the United States Code herein are to the 2006 edition.

value of the merchandise on the seven entries. Mot. for Default J. (Oct. 4, 2017), ECF No. 36 ("Pl.'s Mot."); *see also* 19 U.S.C. § 1592(c)(3)(B). The court imposes a civil penalty in the amount plaintiff seeks and will enter judgment accordingly.

## I. BACKGROUND

The background of this action is presented in the court's three previous opinions and is supplemented, as necessary, herein. *See United States v. Active Frontier Int'l, Inc.*, 36 CIT __, 867 F. Supp. 2d 1312 (2012) (denying without prejudice plaintiff's first application for default judgment); *United States v. Active Frontier Int'l, Inc.*, 36 CIT __, Slip Op. 12-127 (Oct. 3, 2012) (denying without prejudice plaintiff's motion to amend complaint); *United States v. Active Frontier Int'l, Inc.*, 37 CIT __, Slip Op. 13-8 (Jan. 16, 2013) (granting plaintiff's motion to amend complaint).

Before the court are plaintiff's complaint, Second Amended Compl. (July 21, 2016), ECF No. 33 ("Compl."), and its application for default judgment, Pl.'s Mot.

## II. DISCUSSION

### A. Subject Matter Jurisdiction and Standard of Review

Section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1582(1), grants the court jurisdiction over an action to recover a civil penalty under section 592 of the Tariff Act. Under section 592, the court determines all issues, including the amount of any penalty, *de novo*. 19 U.S.C. § 1592(e)(1).

### B. Plaintiff is Entitled to a Default Judgment Imposing a Penalty in the Amount It Seeks

In evaluating an application for judgment by default, the court accepts as true all well-pled facts in the complaint but must reach its own legal conclusions. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688.1

(4th ed. 2016).  For the reasons discussed below, the court rules that plaintiff's Second Amended Complaint sets forth well-pled facts which, if accepted as true, support the imposition of a civil penalty against defendant in the maximum statutory amount.

Section 592(a)(1) provides, in pertinent part, that "no person, by fraud, gross negligence, or negligence . . . may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of . . . any document or electronically transmitted data or information, written or oral statement, or act which is material and false."  19 U.S.C. § 1592(a)(1)(A).

The allegations in the Second Amended Complaint describe the merchandise imported by Active Frontier as consisting of women's capri pants (on Entry No. EH3-07587053) or ladies' jackets and pants (on the remaining six entries, Entry Nos. EH3-06550979, EH3-06556166, EH3-06550730, DQ7-70089166, DQ7-70088549, and DQ7-70088556).[2]  Compl. ¶¶ 11, 17, 21, 29, 36, 43, 49.  The complaint alleges that "Active Frontier entered and/or introduced, or caused to be entered and/or introduced, articles of wearing apparel manufactured in the People's Republic of China into the commerce of the United States, by means of entry documents filed with the U.S. Customs and Border Protection (CBP)."  *Id*. ¶ 6.  The government further alleges that this merchandise was "entered and/or introduced . . . by means of materially false documents, written statements, acts, and/or omissions."  *Id*. ¶ 7.  For each of the seven entries, the complaint alleges that Active Frontier declared falsely on entry documentation that the country of origin of the goods was a country other than China, *id*. ¶ 8, and, specifically, that "Active Frontier submitted to CBP bills of lading, entry summaries, and/or other entry

---

[2] The seven entries were made between June 5, 2006 and March 2, 2007.  Second Amended Complaint ¶ 6 (July 21, 2016), ECF No. 33.

documents incorrectly stating that such articles of wearing apparel were . . . manufactured in Indonesia, Korea, and/or the Philippines," *id.* ¶ 8(a).[3] It also alleges that Active Frontier submitted "Manufacturer's Identification Codes" that incorrectly indicated that the goods were manufactured in either Korea or the Philippines.[4]  *Id.* ¶ 8(b).

With respect to the statutory requirement that the false statements be "material," plaintiff alleges that all of the merchandise on Entry No. EH3-07587053 and some of the merchandise on each of the other six entries were subject to a quota (i.e., a quantitative limitation) that applied to certain apparel products of China.  Compl. ¶¶ 61-63.  Specifically, this merchandise consisted of the pants in each entry, which as entered under subheading 6204.63.3090, HTSUS were within quota category 648 at the time of entry.  *Id.* ¶¶ 56-59.  Because the allegedly false declarations of origin on this quota-subject merchandise interfered with the administration of the quantitative limitation (whether or not the quota had been filled at the time of entry), it was material for purposes of section 592.  In the case of a filled quota, the merchandise would have been inadmissible; in the case of an open quota, the merchandise, by not being counted against the quota, defeated the purpose of the quota.

---

[3] An exhibit to the Second Amended Complaint specifies that the country of origin on Entry Nos. EH3-06550979, DQ7-70089166, DQ7-70088549, and DQ7-70088556 was falsely declared to be Korea, that the country of origin on Entry Nos. EH3-07587053 and EH3-06550730 was falsely declared to be the Philippines, and that the country of origin on Entry No. EH3-06556166 was falsely declared to be Indonesia and/or Korea.  Compl. Ex. 16.

[4] According to an affidavit and attached exhibits, the Manufacturer's Identification Codes for Entries EH3-07587053 and EH3-06550730 indicated the Philippines as the country of origin and those for the remaining five entries indicated the country of origin as Korea.  Decl. of Raymond Irizarry ¶¶ 7-13 (Nov. 28, 2011) ("First Irizarry Decl."); *see also* Compl. Ex. 16.  For all seven entries, according to the affidavit, the true bills of lading stated that China was the origin of the merchandise.  First Irizarry Decl. ¶¶ 7-13; *see also* Compl. Ex. 16.

Plaintiff acknowledges that the jackets, which were entered on five of the six entries (all except for Entry No. EH3-07587053, which contained only pants), were not subject to a quantitative limitation at the time of entry but argues that the false origin declarations on the jackets were also material because they "helped mask the false statements about the pants." Pl.'s Mot. 13. Plaintiff points out that the complaint alleges that the entries contained jackets and pants that featured matching designs and were intended to be advertised and sold as single units. *Id.* at 13-14; *see also* Compl. ¶ 64. The complaint ties this alleged fact to an allegation that the false origin declarations for the jackets made the quota violation as to the pants more difficult to detect: "Had Active Frontier provided different country-of-origin statements for two parts of a single outfit shipped together, the error would have been easier to detect because an official who inspected the entry documents and the goods would expect the two parts of the outfits—matching jackets and pants—to originate from the same country." Compl. ¶ 64. The court considers the allegations that jackets and pants were in matching styles, and that both were falsely declared as to origin, to be sufficient to allow the court to conclude that the allegedly false declarations of origin as to the jackets were material. Had a Customs official been alerted to the different origins and subjected the merchandise to further inspection and inquiry, it is reasonably possible that the quota merchandise, i.e., the pants, which were on the same entries as the jackets, would not have entered the commerce of the United States and therefore would not have defeated the purpose of the quota. Instead, as the Second Amended Complaint indicates, the merchandise was released by the time the violation was discovered, with no samples collected.

Regarding the amount of a penalty, the original complaint filed in this action states that the violations alleged therein did not affect the assessment of duties. Compl. ¶ 13 (May 31, 2011), ECF No. 2. For a negligent violation that did not result in a loss of revenue to

the United States, the statute prescribes a maximum penalty of 20% of the dutiable value, not to exceed the domestic value of the merchandise. 19 U.S.C. § 1592(c)(3)(B). Plaintiff alleges that the aggregate entered value of the merchandise on the six entries was $402,982. Compl. ¶ 73. Twenty percent of that amount is $80,596.40, the penalty amount plaintiff seeks. *Id*. ¶ 77.

Because the amount of penalty is to be determined *de novo* by the court, 19 U.S.C. § 1592(e)(1), the court is not required to impose a penalty in the maximum amount authorized by section 592(c). Plaintiff argues that a penalty in the maximum amount is appropriate because Active Frontier, having failed to respond to CBP's pre-penalty notice and penalty claim, did not put forth any information from which it could be concluded that Active Frontier qualifies for mitigation. Pl.'s Mot. 15. The court agrees that it has no information as to mitigating factors, but the court does not consider this fact alone to be sufficient for imposition of a maximum penalty in the amount of 20% of the dutiable value of the merchandise. The court notes that the Customs penalty guidelines for section 592 violations (which are not binding on the court but may serve as guidance), provide that a penalty for a negligent, non-duty-loss violation normally will be disposed of with a penalty in the range of 5% to 20% of the dutiable value, depending on mitigating and aggravating factors. 19 C.F.R part 171, App. B(F)(2)(c)(ii). Nevertheless, the court, in exercising its discretion, has determined that a penalty in the maximum amount is appropriate for another reason.

Where, as here, the United States seeks a penalty under section 592 based on a culpability level of negligence, "the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4). Because defendant has defaulted, plaintiff need not plead facts from which the court could conclude that

the origin statements alleged to be material and false occurred as a result of the importer's negligence; here, the allegation of negligence will suffice for purposes of seeking a default judgment.

In this instance, plaintiff's factual allegations, if presumed true, clearly would support a conclusion that Active Frontier was negligent. An importer is required to use reasonable care in importing merchandise. *See* 19 U.S.C. § 1484(a)(1). Meeting that standard requires review of information on the characteristics and source of the merchandise and information on the underlying transaction, including review of available documentation, to ensure that origin will be correctly declared upon entry. As noted in an affidavit submitted by plaintiff, the true bills of lading for each of the six entries "clearly stated" that the origin of the merchandise was China. Decl. of Raymond Irizarry ¶¶ 7-13 (Nov. 28, 2011); *see also* Exs. 2, 4, 6, 8, 10, 12, 14 to Compl. If that fact is true, even a minimum effort on the part of defendant likely would have uncovered the origin-related discrepancy in the entry documentation. Therefore, a penalty in the highest amount allowed by statute for a negligent violation is appropriate.

### III. CONCLUSION

Plaintiff has established that it is entitled to a judgment by default in which a civil penalty is imposed on defendant based on a non-revenue-loss violation of section 592, a culpability level of negligence, and merchandise with a dutiable value of $402,982. In exercising its authority to determine the amount of penalty *de novo*, the court will enter judgment for a civil penalty in the amount of $80,596.40, the maximum amount allowed by section 592(c)(3)(B), with

post-judgment interest as provided by law, and costs according to 28 U.S.C. § 1920 and USCIT Rule 54(d).

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Chief Judge

Dated:  May 24, 2018
        New York, New York